**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**CHARLESTON DIVISION**

UNITED STATES OF AMERICA,

        Plaintiff,

v.                                    CRIMINAL ACTION NO. 2:23-cr-00160

STEVEN WAYNE BOWLING,

        Defendant.

**MEMORANDUM OPINION AND ORDER**

The Court has reviewed the Defendant Steven Bowling's *Motion to Suppress Evidence* (Document 37) and the *Response of the United States in Opposition to Defendant's Motion to Suppress Evidence* (Document 39), as well as all attached exhibits. For the reasons stated herein, the Court finds that the motion should be granted.

**FACTS AND BACKGROUND[1]**

The Defendant, Steven Wayne Bowling, was indicted on October 3, 2023, on charges of Possession with Intent to Distribute Methamphetamine in violation of 21 U.S.C. §841(a)(1) and being a Prohibited Person in Possession of a Firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924 (a)(8).

---

1 The facts are drawn from the documentary evidence submitted by the parties. Because the material facts are not in dispute, the Court finds that the facts and legal contentions are adequately presented in the parties' written submissions and further hearing on the motion would not aid the decisional process.

The charges arise from a traffic stop on July 15, 2022. Mr. Bowling was driving a red Toyota Corolla in or near Sissonville, West Virginia. Deputies J.A. Morris and R.D. Berry were each in their own vehicles on stationary patrol in the area. According to Deputy Morris' report,[2] when the red Corolla passed the Deputies at approximately 1:15 a.m., they noticed that it did not have its registration plate illuminated, and Deputy Berry initiated a traffic stop.

The Deputies approached the vehicle and identified Mr. Bowling as the driver and Whitney Parsons as a front seat passenger. Upon making contact, the Deputies observed Ms. Parsons behaving erratically and displaying signs of nervousness, including moving around excessively, appearing unable to remain seated, and grabbing and reaching for items. They asked her to step out of the vehicle. Upon exiting the vehicle, Ms. Parsons was questioned about her and Mr. Bowling's travel plans and whether any illegal narcotics were in the vehicle. Ms. Parsons indicated that she had marijuana in her backpack inside the vehicle. The Deputies then asked Mr. Bowling to step out of the driver's side, and they began a search of the interior of the vehicle.

During the vehicle search, the Deputies recovered a small plastic box on the floor of the passenger seat. The box contained a corner cut plastic bag with a small of amount of suspected methamphetamine therein. Ms. Parsons claimed ownership of the suspected methamphetamine. The Deputies then searched Ms. Parsons's black backpack and found a pill bottle containing the previously identified marijuana.[3] After recovering the plastic box and backpack, the Deputies continued their search to the trunk. Upon opening the locked trunk, the Deputies found a Taurus

---

2 Neither the Defendant nor the United States explicitly state that the facts are drawn from a specific officer's report when recounting the facts. However, the United States refers to "Deputy Morris' report and photographs" in discussing the evidence regarding the registration lights on Mr. Bowling's vehicle. Thus, the Court infers that the remainder of the facts herein were drawn from Deputy Morris' report, although such report has not been submitted.
3 Although it is not entirely clear where Ms. Parsons's backpack was located, there does not appear to be any dispute that it was not in the trunk of the vehicle.

2

9mm pistol lying on a pile of clothes.   Mr. Bowling claimed ownership of the pistol and indicated that there was another pistol in the trunk, after which the Deputies found a Kel-Tec .22 caliber pistol inside a laundry basket with clothing.   They also found a zip-lock bag containing a large amount of suspected methamphetamine inside a camouflage bag.   Mr. Bowling also claimed ownership of the camouflage bag and suspected methamphetamine.

The Deputies determined that Mr. Bowling had prior felony convictions and was prohibited from possessing firearms.   The bag of suspected methamphetamine, which Mr. Bowling claimed ownership of, was seized and tested and confirmed to contain a net weight of approximately 70.6 grams of methamphetamine.

## STANDARD OF REVIEW

When deciding a motion to suppress, the district court may make findings of fact and conclusions of law.   *United States v. Stevenson*, 396 F.3d 538, 541 (4th Cir. 2005).   On a motion to suppress, the burden of proof is on the party who seeks to suppress the evidence.   *United States v. Dickerson*, 655 F.2d 559, 561 (4th Cir. 1981).   However, once the defendant establishes a proper basis for his motion to suppress, the burden shifts to the government to prove the admissibility of the challenged evidence by a preponderance of the evidence.   *United States v. Matlock*, 415 U.S. 164, 177 n.14 (1974).

## DISCUSSION

Mr. Bowling argues that the evidence seized from the trunk of his vehicle should be suppressed for three reasons.   First, he contends the initial traffic stop was not justified because his license plate was properly illuminated.   Second, he asserts that the officers exceeded the appropriate scope and duration of the traffic stop when they "abandoned the mission of the stop .

. . and embarked on an unfounded and overly broad drug investigation." (Mot. to Suppress at 3) (Document 37.) Third, Mr. Bowling specifically challenges the search of his vehicle and trunk and argues that, even if the officers were justified in searching Ms. Parsons's backpack, "they lacked any probable cause, consent, or justification" to search his vehicle and locked trunk.

The United States maintains that neither the traffic stop nor the vehicle search ran afoul of Mr. Bowling's constitutional rights, and that his claims to the contrary are unfounded. In support, the United States argues that the traffic stop was legitimate at its inception, Deputies Morris and Berry's actions during the stop were reasonably related to the basis for the stop, and the Deputies had probable cause to search the entirety of Mr. Bowling's vehicle—including "any containers, or compartments therein"—upon learning that Ms. Parsons had marijuana in her backpack (Resp. of U.S. in Opp. to Def.'s Mot. to Suppress Evid. at 8) (Document 39).

The Fourth Amendment to the Constitution prohibits unreasonable searches and seizures. U.S. Const. amend. IV. Brief detention pursuant to a traffic stop constitutes a "seizure" for purposes of the Fourth Amendment and must therefore be "reasonable." *Whren v. United States*, 517 U.S. 806, 809–10 (1996). "As a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred." *Id.* at 810. "[T]he actual motivations of the individual officers involved" and their "[s]ubjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis." *Id.* at 813 (finding pretextual stops permissible). "Observing a traffic violation provides sufficient justification for a police officer to detain the offending vehicle for as long as it takes to perform the traditional incidents of a routine traffic stop," including checking ID, licenses, registration, and running a computer check. *United States v. Branch*, 537 F.3d 328, 335–36 (4th Cir. 2008).

4

Extending a stop beyond the scope necessary to accomplish the purposes consistent with resolving the traffic violation requires "either the driver's consent or a 'reasonable suspicion' that illegal activity is afoot."  *Id.* at 336.

The basic facts supporting the grounds for the traffic stop appear contested.   For purpose of ruling on this motion, however, the Court will assume that Deputies Morris and Berry observed the stated equipment violation and therefore had probable cause to initiate the traffic stop.   The Court also assumes that reasonable suspicion of illegal activity existed to justify extending the stop beyond simply issuing a citation for the equipment violation based on Ms. Parsons's erratic behavior during the stop.[4]   Thus, the Court turns to whether the search of Mr. Bowling's entire vehicle, including the trunk, was justified.

Warrantless searches "are *per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions."  *California v. Acevedo*, 500 U.S. 565, 580 (1991) (internal quotation marks omitted).   Evidence obtained because of that unreasonable search is therefore inadmissible absent an exception that would allow the Government to introduce it.  *See Elkins v. United States*, 364 U.S. 206, 212–13 (1960).   The Supreme Court has identified a limited number of exceptions that may permit the government to conduct a warrantless search.   Absent one of these exigencies or specific exceptions, evidence seized during an unreasonable warrantless search must be suppressed under the exclusionary rule. *United States v. Calandra*, 414 U.S. 338, 347 (1974).

---

4 The Court notes that the facts drawn from the police report and presented by the United States would, *if true*, support these findings.   However, if the outcome of the Defendant's motion to suppress turned on such theories, a hearing would be necessary to permit the Defendant to test the Deputies' credibility and allow further factual development.

To support law enforcement's search and seizure here, the United States argues that the warrantless search of the trunk and warrantless seizure of the suspected methamphetamine and firearms is legally justified under the automobile exception. The automobile exception permits the police to conduct a warrantless search of a vehicle only if the vehicle can be easily moved, and the officers have probable cause to believe it contains contraband. *United States v. Davis*, 997 F.3d 191, 201 (4th Cir. 2021) (citations omitted); *see also Maryland v. Dyson*, 527 U.S. 465, 467 (1999) (per curiam) (internal quotation marks omitted). The exception can exist even when it is the passenger rather than the driver who is suspected of criminal activity. *United States v. Hensley*, 469 U.S. 221, 235 (1985). "The scope of a warrantless search of an automobile . . . is not defined by the nature of the container in which the contraband is secreted," but "[r]ather, . . . the object of the search and the places in which there is probable cause to believe that it may be found." *United States v. Ross*, 456 U.S. 798, 824 (1982). "Probable cause exists when 'the known facts and circumstances are sufficient to warrant a man of reasonable prudence in the belief that contraband or evidence of a crime will be found.'" *United States v. Patiutka*, 804 F.3d 684, 690 (4th Cir. 2015) (quoting *Ornelas v. United States*, 517 U.S. 690, 696 (1996)). "The principal components of a determination of . . . probable cause will be the events which occurred leading up to the stop or search, and then the decision whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to . . . probable cause." *United States v. Brookins*, 345 F.3d 231, 235–36 (4th Cir. 2003) (quoting *Ornelas*, 517 U.S. at 696).

Neither Deputy identified signs of nervousness or erratic behavior by Mr. Bowling and there is no indication that he made any statement regarding the presence of contraband in his vehicle. Thus, the only conceivable justifications for the search are the Deputies' contention that

6

Ms. Parsons was acting nervous and her statement that she had marijuana in her backpack.   While this evidence supports the existence of probable cause for a limited search for and of Ms. Parsons's backpack, it does not support a finding of probable cause to search the entire vehicle.

Despite the United States' reference to several cases to assert that probable cause existed, the holdings of each are distinguishable.   First, in *United States v. Ross*, 456 U.S. 798 (1982), the Supreme Court held that "the scope of the warrantless search authorized by [the automobile] exception is no broader and no narrower than a magistrate could legitimately authorize by warrant."   456 U.S. at 825.   Thus, "[i]f probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents *that may conceal the object of the search."   Id.* (emphasis added)   In so finding, however, the Court distinguished the factual circumstances of *Ross* from prior cases where probable cause had existed to search a particular object in a vehicle, but not the entire vehicle itself.   *See id.* at 817 ("Unlike *Chadwick* and *Sanders*, in this case police officers had probable cause to search respondent's *entire* vehicle." (emphasis added)); *see also id.* at n.22 (noting that the en banc Court of Appeals in *Ross* had found, in part, that the informant told the police that Ross had narcotics in the trunk of his car, but no specific container was identified.).   Indeed, in discussing examples of the Court's holding in application, the Court noted that "[p]robable cause to believe that a container placed in the trunk of a taxi contains contraband or evidence does not justify a search of the entire cab."   *Id.* at 824.

The Supreme Court reaffirmed this principle in *California v. Acevedo*, 500 U.S. 565 (1991), where it determined that police had probable cause to believe that a paper bag in the trunk of the defendant's automobile contained marijuana, and thus probable cause existed to conduct a warrantless search of the paper bag.   500 U.S. at 580.   The Court emphasized that "[t]he facts in

7

the record reveal that the police did not have probable cause to believe that contraband was hidden in *any other part* of the automobile and a search of the entire vehicle would have been without probable cause and unreasonable under the Fourth Amendment." *Id.* (emphasis added).

In *Pennsylvania v. Labron*, 518 U.S. 938 (1996), the Supreme Court likewise noted that probable cause had been established in consolidated cases on appeal from the Supreme Court of Pennsylvania. In one, "[p]olice had seen respondent Labron put drugs in the trunk of the car they searched." 518 U.S. at 940. In the other, police "had seen respondent Kilgore act in ways that suggested he had drugs in his truck," including walking back and forth from the truck with an accomplice who had come to obtain drugs from Kilgore after making a deal with an undercover informant. *See id.* However, here, neither Deputy observed Mr. Bowling placing contraband in the trunk or any other part of his vehicle, and there is no evidence that they had reason to believe that Ms. Parsons's mere presence with Mr. Bowling was suspicious.

Likewise, *United States v. Kelly*, 592 F.3d 586 (4th Cir. 2010), involved a search of additional compartments of a vehicle after a drug detection dog positively alerted at a door of the vehicle. In considering various "practical realities" of using drug detection dogs, the Fourth Circuit determined that it was "reasonable to conclude that the odor which the dog detected may have travelled from the trunk, which is after all a logical place for drugs to be stored." *Id.* at 592. The Court noted several additional factors present at the time of the search, including the presence of an individual whom police believed to be the defendant's drug supplier and the fact that the defendant nodded "yes" when asked if there was cocaine in any of the vehicles parked outside his residence. Unlike *Kelly*, neither the use of a drug detection dog nor the additional historical facts are present here. Critically, *Kelly* reiterated the Supreme Court's holding in *Acevedo* that "[t]o be

8

sure, probable cause to search one compartment or container within a car does not invariably provide probable cause to search the entire vehicle." *Id.* (citing *California v. Acevedo*, 500 U.S. at 580).

Accordingly, because the Deputies only had probable cause to believe that contraband *(the object of the search)* was contained in Ms. Parsons backpack and without additional facts indicating that contraband was hidden in any other part of the automobile, the evidence presented falls short of establishing probable cause to justify the search of the trunk under the automobile exception.

## CONCLUSION

Wherefore, after thorough review and careful consideration, the Court **ORDERS** that the Defendant's *Motion to Suppress Evidence* (Document 37) be **GRANTED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to the Defendant and counsel, to the United States Attorney, to the United States Probation Office, and to the Office of the United States Marshal.

ENTER:    July 30, 2026

IRENE C. BERGER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF WEST VIRGINIA

9